MAGNOLIA FARMERS ELEVATOR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6853.   Promulgated March 16, 1927.

A corporation operating a grain elevator received for storage grain which it sold instead of storing it, and when the owners of the grain authorized its sale the corporation paid them the market price of the grain on the day the sale was authorized. When grain was received for storage the corporation set up on its books a liability to the owner in bushels but not in dollars. *Held*, that gain or loss did not arise until an obligation to pay for the grain arose.

*John O. Loeffler, Esq.*, for the petitioner.
*F. O. Graves, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes for the fiscal year ended May 31, 1920, and the fiscal period June 1, 1920, to June 30, 1920, in the total amount of $1,503.96. The deficiencies arise on account of the action of the respondent in disallowing the amount of $11,886.10, claimed by the petitioner as storage liability, for which amount no liability was set up on the balance sheet of the petitioner.

#### FINDINGS OF FACT.

The petitioner is a Minnesota corporation with its principal place of business at Magnolia. It was engaged in the business of operat-

ing a grain elevator. It received for storage corn, oats, barley, and flax. The amount of grain received each year was greater than the storage capacity of the elevator and quantities of grain were shipped out and sold instead of actually being stored. It was the custom of the trade, which was followed by the petitioner, to receive grain from farmers, to issue a warehouse receipt for the number of bushels, and if it did not have space in which to store the grain in its warehouse at Magnolia, to ship it to other places for storage or to sell it at the market price.

During 1920 the petitioner received—up to May 31—5,251 bushels of corn which it sold and shipped. It received the market price therefor. It, however, did not account to the farmers who brought in the corn until they authorized the sale thereof. When the petitioner was authorized to sell the corn, instead of selling it at that time, it issued its check in payment therefor at the market price prevailing on that particular day.

The petitioner set up on its journal the amount in bushels as a liability for all corn which it had received and sold instead of actually storing it, but did not set up any liability in dollars. The liability in dollars was determined by the market price of grain, which fluctuated from day to day. This was the custom of the petitioner and was in accordance with the custom of the trade in that locality. It included in its inventory at the end of each year only the grain on hand in its warehouse.

The above-mentioned 5,251 bushels of grain which the petitioner received for storage but which were sold and shipped on or before the close of its fiscal year which ended May 31, 1920, were authorized to be sold by the farmers who brought the grain into the warehouse subsequent to May 31, and also subsequent to June 30, 1920, and the petitioner paid to the farmers the market price thereof on the dates on which it was authorized to be sold.

Between June 1 and June 30 the petitioner received for storage 1,459 bushels, which it sold and shipped and for which it paid to the farmers who brought it in the market price on the dates when the farmers authorized it to be sold, which dates were subsequent to June 30, 1920.

The market value of corn of the highest grade on June 30, 1920, was $1.64 per bushel. The price was different for different grades. There would be a variation of from 2 to 2½ cents per bushel on lower grades on that date. Since the books of the petitioner did not reflect any liability in dollars at the close of the respective taxable periods, the respondent disallowed any liability and restored to income the amount of $11,886.10, which the petitioner claimed was the liability which actually existed on June 30, 1920.

The petitioner kept its books and accounts on the basis of a fiscal year ended May 31 of each year. In 1920, however, it changed the closing of its fiscal year from May 31 to June 30.

OPINION.

TRAMMELL: The petitioner has proceeded in its presentation of the case upon the theory that the return for the fiscal year 1920 was made on the basis of 13 months and allocated the proportionate part of the income to the respective taxable periods. In our opinion, a separate return should have been made for the period from May 31 to June 30, 1920, in accordance with section 226 of the Revenue Act of 1918, which, in so far as it is pertinent, provides as follows:

> If the change is from one fiscal year to another fiscal year a separate return shall be made for the period between the close of the former fiscal year and the date designated as the close of the new fiscal year.

The net income should be computed on the basis of the period for which separate returns are required.

The question then is, What was the taxable income for the respective periods? The petitioner contends that there was a liability at the end of any period determined by the market price of grain on that date. It was undoubtedly liable to pay to the farmers who delivered grain the market value on the day they authorized the sales, less charges for storage or other charges, but it had no means of knowing the amount which it would actually be required to pay. The petitioner might have made a profit or suffered a loss. This fact, however, could not be known until the farmer authorized the sale when the petitioner was required to make payment. Its profit was not measured by the difference between the liability at the end of the year and the sales price of the grain, but by the difference between what it was required to pay and the sales price. This might have been materially different. In our opinion, the sale of the grain by the petitioner was only a part of the transaction resulting in gain or loss. The other part of the transaction was the request or authority of the farmer to sell. The transaction was not complete until this had occurred. Until then no fact had occurred which established gain or loss. The petitioner's liability on a particular day to pay for the grain which it had sold has no material bearing on the amount of actual gain or loss derived from the transaction.

In our opinion, the petitioner should have reported no gain or profit from these transactions until it had received a request or authority from the farmers to sell the grain. This definitely fixed the price which the petitioner paid for the grain. The method adopted by the petitioner for keeping its books and accounts did not clearly reflect its income in that it ignored a fundamental principle on which gain or loss is determined. The tax should be computed upon the basis of completed transactions during the fiscal periods involved.

*Judgment will be entered on 15 days' notice, under Rule 50.*